UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DOROTHY LINGAFELTER,<br><br>    Plaintiff,<br><br>v.<br><br>ST. MARY'S MEDICAL CENTER OF EVANSVILLE, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  CAUSE NO:  3:13-cv-00211<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  Nature of the Case**

1. Plaintiff, Dorothy Lingafelter ("Lingafelter"), brings this Complaint against Defendant, St. Mary's Medical Center of Evansville, Inc., ("Defendant"), for their discrimination against her based on her genetic information and disability in violation of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), 42 U.S.C. §2000ff-1 et. seq. and the American with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et. seq.

**II.  Parties, Jurisdiction and Venue**

2. Defendant is a corporation doing substantial business in the Southern District of Indiana.

3. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

4. Lingafelter is a qualified individual with a disability as that term is defined by the ADA, 42 U.S.C. § 12102(2)(c).  At all relevant times, Defendant had knowledge of Lingafelter's disability and/or it regarded Lingafelter as being disabled and/or Lingafelter has a record of being disabled.

5. Lingafelter is an "employee" as that term is defined by section 201(2)(a) of GINA.

6. Defendant is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A) and section 201(2)(b) of GINA.

7. Lingafelter satisfied her obligation to exhaust her administrative remedies having timely filed U.S. Equal Employment Opportunity Commission Charges alleging disability discrimination and retaliation against Defendant. Lingafelter amended her Charge to include a violation of GINA, received her Notice of Suit Rights and timely files this action.

8. All events, transactions, and occurrences pertinent to this lawsuit have occurred in the legal environs of the Southern District of Indiana, thus venue in this Court is proper.

### IV.  Factual Allegations

9. Lingafelter was hired by the Defendant on May 16, 2011 as a Registered Nurse and remained employed in that position until the date of her termination on April 18, 2012.

10. At all times relevant, Lingafelter met or exceeded the Defendant's legitimate performance expectations.

11. Lingafelter suffers from Coronary Artery Disease, which is an affliction that affects her heart and is associated with heart disease.

12. On September 14, 2011, Lingafelter underwent a procedure and had a stent placed in her heart. Lingafelter missed only one day of work due to this procedure and returned to her regular duties with no restrictions.

13. Lingafelter's supervisor, William Carter ("Carter"), asked Lingafelter on several occasions about her heart disease and her family history concerning heart problems and heart disease.

14. In or about January 12, 2012, Lingafelter underwent an angioplasty procedure, missed two days of work and was then released by her cardiologist, Dr. Tatenini ("Tatenini"), to return to work with no restrictions on January 17, 2012.

15. Before she returned to work on January 17, 2012, Lingafelter received a call from Employee Health with the Defendant and was instructed that she would have to undergo a Functional Capacity Exam ("FCE") before she would be permitted to return to her position. Lingafelter was not required to complete an FCE before she returned to work in September of 2012.

16. The FCE took place on January 20. Upon her arrival for the exam, the Physical Therapist asked why she was there because he had never performed an FCE on an employee with problems related to their heart and heart disease.

17. During the beginning phase of the FCE, Lingafelter was questioned by the Physical Therapist about her family medical history.

18. Additionally, during the four (4) hour FCE Lingafelter was required to run on a treadmill, run up six flights of stairs and lift a forty (40) pound weight over her head numerous times. Lingafelter refused to run on the treadmill because there was no physician present for the FCE, but completed the stair and lifting exercises as instructed. This FCE was entirely improper for Lingafelter to complete due to her existing heart condition.

19. The FCE was entirely improper for Lingafelter to complete due to her existing heart condition.

20. After the completion of the FCE, Lingafelter was concerned and visited with her primary care physician, Dr. Lineberry ("Lineberry") on January 23, 2012. Lineberry determined

that Lingafelter should be off work and filled out Short Term Disability ("STD") paperwork and faxed it to the hospital on that date.

21. On January 24, 2012, Lingafelter was informed by Human Resources representative Tara Neth ("Neth") via a telephone call and email message that her STD request had been approved.

22. On January 25, 2012, Lingafelter was contacted by Employee Health with the Defendant and was informed that she had passed her FCE and could return to her position working only four (4) hour shifts. Lingafelter did not return to work at this time because she had been approved for STD leave.

23. On February 1, 2013, Lingafelter was contacted by Human Resources representative Suzanne Fant ("Fant"), who informed her that she had not seen any paperwork for her STD leave and that Lingafelter, "may not have a job" unless she attended a meeting with Fant on Feburary 3, 2012.

24. Lingafelter attended the ordered meeting on February 3, 2012, and Fant informed Lingafelter that her STD leave request had not been approved and that she thought Lingafelter was "trying to scam disability" because she had passed her FCE but now was applying for STD leave. Fant ordered Lingafelter to revisit with Lineberry and inform him that she had passed her FCE and also demanded to speak to Lineberry directly.

25. As instructed, Lingafelter visited with Lineberry on February 6, 2012 and informed him that she had passed her FCE. Lineberry informed Lingafelter that his diagnosis was that she needed to be on STD leave. Lineberry called Fant on February 7, 2012, which caused Fant to back off her allegations that Lingafelter was "trying to scam disability."

26. On February 28, 2012, Lingafelter was contacted by Fant and was informed that her previous position had been posted for open hiring and had already been filled.

27. Lingafelter was eligible to return to work without restrictions on April 9, 2012. Lingafelter was informed by Fant on that day she had no position to return to because her job had been filled. Fant also informed Lingafelter that she would now have to apply for any open positions and go through the full application and interview process to receive a position.

28. On April 10, 2012, Lingafelter was contacted by a co-worker who Lingafelter previously worked with who informed her that she put in her notice that she would no longer be working for the Defendant that day. Lingafelter contacted the Defendant on that same day about application for the position and was informed that it had already been filled.

29. Lingafelter was officially terminated on April 18, 2012, after she was informed there would be no open positions for her.

30. Lingafelter was terminated due to her family medical history and disability, and the positions open for hiring were given to persons who did not suffer from a disability.

## V. Legal Allegations

### Count I. ADA – Discrimination

31. Lingafelter hereby incorporates paragraphs one (1) through thirty (30) of her Complaint as if the same were set forth at length herein.

32. Defendant violated Lingafelter's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. by discriminating against her and terminating her employment based on her disability.

33. Defendant's actions were intentional, willful and in reckless disregard of Lingafelter's rights as protected by the ADA.

34. Lingafelter has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## Count II. ADA—Retaliation

35. Lingafelter hereby incorporates paragraphs one (1) through thirty-four (34) of her Complaint as if the same were set forth at length herein.

36. Defendant retaliated against Lingafelter for her disability and request for Short Term Disability leave by terminating her employment.

37. Defendant's actions were intentional, willful and in reckless disregard of Lingafelter's rights as protected by the ADA.

38. Lingafelter has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## Count III. GINA Violation

39. Lingafelter hereby incorporates paragraphs one (1) through thirty-eight (38) of her Complaint as if the same were set forth at length herein.

40. Employees for the Defendant questioned Lingafelter about her genetic information and family medical history and considered this as a negative factor resulting in the termination of her employment.

41. Defendant's actions were intentional, willful and in reckless disregard of Lingafelter's rights as protected by GINA.

42. Lingafelter has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## Count IV.  Intentional Infliction of Emotional Distress

43. Lingafelter hereby incorporates by reference paragraphs one (1) through forty-two (42) as if the same were set forth at length herein.

44. Defendant's extreme and outrageous conduct caused Lingafelter to suffer severe emotional distress.

## VI. Requested Relief

WHEREFORE, Plaintiff, Dorothy Lingafelter, by counsel, respectfully requests that this Court find for Plaintiff and:

1. Permanently enjoin Defendants from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her disability or genetic information;

2. Reinstate the Plaintiff to her former position or award front pay in lieu thereof;

3. Order that the Plaintiff be awarded any back pay she would have earned, including fringe benefits, with related monetary benefits and interest thereon, absent Defendant's unlawful acts;

4. Award the Plaintiff compensatory damages, consequential damages, and lost wages and benefits in an amount sufficient to compensate Plaintiff for the damages caused by the Defendant's wrongful actions;

5. Award the Plaintiff punitive damages;

6. Award the Plaintiff her attorney fees, litigation expenses and costs incurred as a result of this action;

7. Award the Plaintiff pre- and post-judgment interest on all sums recoverable;

8. Grant such other relief as may be just and proper.

Respectfully submitted,

/s/Benjamin R. Aylsworth
Benjamin R. Aylsworth, Attorney No. 29817-87
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:	(812) 424-1000
Facsimile:	(812) 424-1005
Email:	baylsworth@bdlegal.com

*Attorneys for Plaintiff, Dorothy Lingafelter*

## DEMAND FOR JURY TRIAL

The Plaintiff, Dorothy Lingafelter, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

/s/Benjamin R. Aylsworth
Benjamin R. Aylsworth, Attorney No. 29817-87
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:	(812) 424-1000
Facsimile:	(812) 424-1005
Email:	baylsworth@bdlegal.com

*Attorneys for Plaintiff, Dorothy Lingafelter*